UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

EARL CARROLL,                                          Case No. DG 14-05844
                                                       Chapter 11
          Debtor.                                      Hon. Scott W. Dales

_____/

## MEMORANDUM OF DECISION & ORDER

PRESENT:    HONORABLE SCOTT W. DALES
            Chief United States Bankruptcy Judge


The court held a hearing in Grand Rapids, Michigan, on May 8, 2019, to consider a post-confirmation motion to convert chapter 11 debtor Earl Carroll's chapter 11 case under 11 U.S.C. § 1112 filed by the Debtor's former court-appointed counsel, Kurt O'Keefe, Esq. *See* Petition to Convert Case to Chapter 7 (the "Motion," ECF No. 213). Mr. Carroll (the "Debtor") opposes the Motion, but creditor Chemical Bank concurs. The United States Trustee did not formally respond to the Motion but appeared at the  hearing through counsel and generally supported it.

The court heard extensive argument from counsel, but no one offered any evidence, although the court's posted procedures under Fed. R. Bankr. P. 9014(c) gave notice that the hearing would be conducted as an evidentiary hearing, and the court specifically reminded the parties about its posted procedures. The court took the matter under advisement, hopeful that it could resolve the dispute on the papers submitted, but mindful that an evidentiary hearing might ultimately be necessary even after giving consideration to the parties' arguments. The court has determined that it can resolve this dispute without conducting another hearing. This opinion provides the court's rationale for granting the Motion.

Mr. O'Keefe represented the Debtor as debtor-in-possession in connection with this case pursuant to the court's order under § 327 (ECF No. 33), from the commencement of the case until the Debtor terminated the representation in September 2018. In three separate orders,[1] the court has approved Mr. O'Keefe's fees for his legal services, pre-confirmation and post, including most recently in February of this year. More specifically, on January 7, 2019, the Debtor and Mr. O'Keefe filed a Stipulation Resolving Objections to Third Fee Application, (ECF No. 208, the "Stipulation"), which the court approved by entering the Order Approving the Final Fee Application on February 5, 2019 (ECF No. 212). Cumulatively, this approval of the final fee application brought the total award to Mr. O'Keefe of fees (approved as an administrative expense) to $28,689.60,[2] as reflected in three orders that, until the Debtor responded to Mr. O'Keefe's present Motion, have not been challenged in any way, neither through appeal, nor pursuant to Fed. R. Bankr. P. 9024, nor otherwise. At the time of the hearing on the Motion, the Fee Orders remained binding and effective.

On March 19, 2019, Mr. O'Keefe filed the Motion, citing as "cause" the Debtor's failure to pay the fees the court approved as administrative expenses, contrary to Debtor's Third Amended Plan as confirmed (ECF No. 144, the "Plan"). Chemical Bank, a lender with a claim also provided for under the Plan, filed a document concurring in the Motion (the "Concurrence," ECF No. 223) and claiming, among other things, a material plan default related to the Debtor's guaranty of the debts of his family business, Whitehouse Whitetails, LLC ("Whitetails").[3] The Plan, as confirmed, provided that the Debtor would pay post-confirmation administrative expenses (including Mr.

---

[1] The orders are docketed as ECF Nos. 89, 162, and 212 (hereinafter the "Fee Orders").

[2] At the hearing, the United States Trustee recited a slightly different figure ($28,601.08) but the court does not regard the difference as material for purposes of today's decision.

[3] The Debtor's wife, Laura, owns Whitetails according to the Plan (Art. I, Introduction).

O'Keefe's approved fees) either "as agreed" with the holder of the claim or "current," and that Whitetails would satisfy the Debtor's guaranty obligation to Chemical Bank by making payments to Chemical Bank as agreed in the loan documents. There is no meaningful controversy about the Debtor's failure to make the payments either to Mr. O'Keefe as agreed or current, or about the failure of Whitetails to pay Chemical Bank pursuant to the loan documents. Instead, the Debtor objects to the Motion by arguing that Mr. O'Keefe's supposedly undisclosed conflict of interest in representing the Debtor's family business (Whitetails) disqualifies him from receiving any fee. As for Chemical Bank's allegation that the failure of Whitetails to pay the Bank as agreed constitutes a default under the Plan, the Debtor simply argues that the Plan is ambiguous in this respect. The court rejects both arguments.

Section 1112 prescribes the statutory process for converting or dismissing a chapter 11 case and enumerates several examples of "cause" warranting conversion or dismissal,[4] including a material default by the debtor with respect to a confirmed plan. 11 U.S.C. § 1112(b)(4)(N). Indeed, the Motion and Chemical Bank's concurrence (at least in part) both allege material defaults under the Plan.

With respect to the Motion, Mr. O'Keefe contends that the Debtor has not fully paid the administrative claims the court approved in the Fee Orders, contrary to the provisions of the Debtor's Plan. According to the Plan, the Debtor must pay administrative expenses as follows:

> (1) ". . .in full on or before the Effective Date unless otherwise ordered by the Court, in cash" . . .;

---

[4] The enumeration within § 1112(b) is not an exhaustive list. *In re Westgate Properties, Ltd.,* 432 B.R. 720, 722 (Bankr. N.D. Ohio 2010). Although the parties did not raise the issue during the hearing, a review of the docket shows that the Debtor has not filed a single quarterly operating report with the court since the court reopened his case, contrary to the express terms of the confirmation order entered in this case. See Order Confirming Plan dated February 8, 2016 (ECF No. 152) at p. 1 ("After confirmation, the reorganized debtor shall file with the Bankruptcy Court and the United States Trustee a quarterly post confirmation report, in the format specified by the U.S. Trustee, for each quarter that the case remains open."); *see also* 11 U.S.C. § 1112(b)(4)(E) and (F) (failure to comply with court order or reporting requirement is cause to convert or dismiss).

> (2) ". . .upon such other terms as may be agreed upon by the holder of such allowed expense or Allowed Claim and the Debtor . . ."  or
>
> (3) " . . .on a current basis."

*See* Plan at Art. III, pp. 3-4.  The first option (for paying claims on the "Effective Date") obviously and necessarily applies only to pre-confirmation claims, but the provision for paying administrative claims "as may be agreed" also applies to post-confirmation claims, including a substantial portion of Mr. O'Keefe's claim, as does the requirement of paying administrative claims "on a current basis."  From the Debtor's response to the Motion, it appears that the Debtor has not paid Mr. O'Keefe's administrative claims, and has no intention of paying them, either "as agreed" or "on a current basis."

Instead, the Debtor argues that the court should excuse him from paying Mr. O'Keefe because Mr. O'Keefe's alleged non-disclosure of his relationship with Whitetails disqualifies him from being paid, presumably based on authorities such as *Mapother & Mapother PSC v. Cooper, (In re Downs)*, 103 F.3d 472, 477 (6th Cir. 1996).  Mr. O'Keefe's representation of the Debtor and his wife in their failed chapter 12 case, Case No. 13-08930, the Plan's dependence on the wife's business (Whitetails, also his employer) to fund the Debtor's Plan, and Mr. O'Keefe's Rule 2016 statement make this allegation possibly sanctionable.  As the United States Trustee's counsel noted without contradiction during the hearing, Mr. O'Keefe disclosed at the first meeting of creditors that he was waiving any claim against Whitetails for his prior representation of that entity to meet the requirement of disinterestedness in this case.

As noted above, until the Debtor filed his response to the Motion, the Fee Orders remained unchallenged, effective, and binding on the Debtor.  The court will not allow a debtor-in-possession -- a fiduciary with full knowledge of, and acquiescence in, duly-entered court orders -- to justify his material default under a confirmed plan by collaterally attacking the court's orders.

The challenge is not only procedurally improper,[5] but also, in the apt description the United States Trustee used during the hearing, "disingenuous." Moreover, assuming the Debtor's untimely attack on the Fee Orders has merit, his failure to mount the challenge until now fortifies the Motion by raising questions about his own fitness as an estate fiduciary. A fit fiduciary does not challenge a substantial expense of administration only when it suits his personal purposes. The Fee Orders estop him from excusing his material default under the Plan on the grounds he asserts. The fees that the court approved, and that the Debtor stipulated to, remain unpaid and the court finds that the Debtor has, without justification, materially defaulted under his confirmed Plan at least in this respect.

In addition to the default resulting from the Debtor's failure to pay the substantial administrative expense in accordance with the Plan, Chemical Bank contends that the failure of Whitehouse to pay the Bank also constitutes a material default under the Plan. With respect to Chemical Bank's claim against the Debtor as guarantor of the Whitetail debt, the Plan provides, succinctly, that "[t]he loan from Chemical Bank . . .[is] to Whitehouse Whitetails, LLC which has, and will continue to, make the payments." Plan at Art. III, p. 4. As Chemical Bank stated without contradiction in its papers, the loan matured on April 30, 2017 (ECF No. 223, p. 2, ¶ 8). And, in his Response to the Concurrence (ECF No. 227), the Debtor states that "Whitehouse Whitetails, Inc. [sic] has in good faith attempted to settle this claim which was rejected without a counteroffer and has also requested a meeting with [Chemical Bank] to discuss resolution which was also rejected." *Id*. p.1. The court regards this statement, and statements of the Debtor's counsel during the hearing, as corroborating Chemical Bank's contention that Whitehouse has not paid the co-

---

[5] Even assuming, implausibly, that the grounds for the Debtor's collateral attack on the Fee Orders are newly discovered evidence, a motion for relief under Fed. R. Bankr. P. 9024 would have provided all parties with appropriate notice and an opportunity to respond. A collateral attack on an order in response to an unrelated motion is inconsistent with orderly practice and due process.

signed debt, contrary to the provisions of the Plan quoted above.  A plan that provides for a claim by relying on a third-party to make the payment imposes upon a debtor the risk of non-payment. In other words, the failure of Whitetails to pay Chemical Bank under the loan documents is not only a default under the loan documents but also under the Plan, and a material default at that.

The mechanics governing conversion or dismissal motions under Chapter 11 are rather clear, and in the court's view, somewhat unforgiving:

> (1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court *shall* convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1) (emphasis added).  The Debtor has not suggested that § 1112(c) applies but argues under § 1112(b)(2) that "unusual circumstances" counsel against conversion or dismissal.  He contends that unusual circumstances exist because there would be no property to administer in the chapter 7 estate and no benefit to Mr. O'Keefe from conversion; that he has fully paid the Kubota claim; is current with Shellpoint Mortgage; and is "close to completing his Plan." Amended Objection to Petition to Convert Case to Chapter 7 (ECF No. 221) at p. 4.  He also states that conversion "will cause a default on cramdown of the unsecured portion of the mortgage lien on the homestead property." *Id.*  Even assuming that the court could specifically identify these circumstances as unusual, it cannot make the findings required under § 1112(b)(2)(B)(i) or (ii) that "the grounds for converting or dismissing the case include an act or omission of the debtor . . . (i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court."  The court has already rejected the supposed justification with respect to Mr. O'Keefe's fees as unreasonable in light of the binding effect of

the Fee Orders, and the Debtor made no effort to show that any cure of the defaults as to either Mr. O'Keefe or Chemical Bank is in prospect. At most, counsel articulated only his unfruitful proposal to settle the Chemical Bank claim at a discount.

As between conversion or dismissal, the court favors conversion principally because a chapter 7 trustee, once appointed, will independently review the alleged irregularities, post-petition transfers, and undisclosed assets that Chemical Bank identifies in its concurrence, as well as the Debtor's challenges to Mr. O'Keefe's alleged misconduct, if any purpose may be served by doing so. To summarize, even ignoring the Debtor's post-reopening monthly reporting defaults, the court finds cause to convert this case to chapter 7 based on the Debtor's material default in meeting his obligations under the Plan to satisfy the claims of Mr. O'Keefe and Chemical Bank.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1.      The Motion (ECF No. 213) is GRANTED;

2.      The Debtor's bankruptcy case is converted to chapter 7; and

3.      The United States Trustee shall appoint a chapter 7 trustee forthwith.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Earl Carroll, Kurt A. O'Keefe, Esq., Jeffrey H. Bigelman, Esq., and the United States Trustee.

END OF ORDER

**IT IS SO ORDERED.**

**Dated May 13, 2019**



_____
Scott W. Dales
United States Bankruptcy Judge